# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-17-11-R |
| | ) | |
| DENNIS LEE, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Dennis Lee moves the Court to suppress evidence found in the search of his residence. Doc. 83. The Government has responded, Doc. 84, and the Defendant has replied, Doc. 85. For the reasons that follow, Defendant's Motion is DENIED.

## I

The events culminating in the search of Defendant Dennis Lee's residence began with the arrest of three persons believed to be a part of an interstate theft ring. Following these arrests, some cooperation by the conspirators, and the recovery of several pieces of stolen property, the Government applied for, and was granted, a search warrant for Mr. Lee's residence in Newcastle, Oklahoma. The search of the home's wall safe revealed guns and ammunition, for which the Government subsequently charged Mr. Lee for illegally possessing a firearm as a felon, 18 U.S.C. § 922(g).

Moving to suppress this evidence, Mr. Lee argues the Government lacked probable cause to search his home and that the warrant was so facially deficient that officers could not have acted in good faith in executing it.

1

## II

The Fourth Amendment demands that probable cause support the warrant that authorized the Government's search of Mr. Lee's residence. *See* U.S. Const. amend. IV. (stating "no warrants shall issue, but upon probable cause"). "Indeed, the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. Biglow*, 562 F.3d 1272, 1275 (10th Cir. 2009) (citing *United States v. U.S. Dist. Court*, 407 U.S. 297, 313, 92 S.Ct. 2125 (1972)). As a result, probable cause requires some nexus between the suspected criminal activity and the place to be searched, *id.* at 1278, a question that "depends upon the facts of each case." *Biglow*, 562 F.3d at 1279 (citing *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795 (2003)). There are, however, certain "non-exhaustive factors" that may determine whether the nexus is present: (1) the type of crime at issue, (2) the extent of a suspect's opportunity for concealment, (3) the nature of the evidence sought, and (4) all reasonable inferences as to where a criminal would likely keep such evidence." *Biglow*, 562 F.3d at 1279.

These factors, Mr. Lee contends, do not establish any nexus between his participation in the interstate theft ring and his residence. The first question, then, is whether there was probable cause to search Mr. Lee's residence—that is, whether the "affidavit in support of [the] search warrant [contained] facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000). The Magistrate Judge believed so, and the Court affords that determination great deference so long as there is a "substantial basis for concluding that probable cause existed." *Id.*

Yet there is a second, equally important question: if the warrant lacked probable cause, did officers act in good faith in relying on the warrant? If so, the Government may introduce that evidence nonetheless, save for a few narrow exceptions. *See United States v. Leon*, 468 U.S. 897, 945, 104 S.Ct. 3405 (10th Cir. 1984).

### III

Because the whole of Mr. Lee's argument is that the application for the search warrant—consisting solely of FBI Agent Kenneth Thompson's affidavit—failed to establish probable cause, the Court's analysis begins and ends with a summary of the affidavit's allegations.

The affidavit first introduces the alleged interstate theft ring and describes Oklahoma City police officers' arrests on July 21, 2016, of three persons believed to be involved in the conspiracy: Dakota Epperly, Dakotah Henderson, and Amanda Czermak. That day, undercover officers purchased from the suspects an ATV and lawnmower that police had reason to believe the suspects had stolen from Kansas. Doc. 83, Ex. 1, Affidavit, at 4. Searches of the suspects pursuant to the arrest uncovered multiple master keys to tractors, ATVs, utility task vehicles, and lawn mowers. Affidavit, at 4.

A little over two months later, Czermak, whom the affidavit characterized as "very reliable," began to cooperate with law enforcement—cooperation that, as the affidavit explained—had led to the recovery of 12 separate stolen items worth in total more than $100,000. Czermak outlined the workings of an interstate theft ring covering four states. Czermak, along with her boyfriend, Dakotah Henderson, would travel outside Oklahoma to steal tractors, trailers, ATVs, UTVs, golf carts, and lawn mowers. Their thefts, though

were not spontaneous; rather, Dakota Epperly (their co-arrestee) would instruct Czermak and Hendeson via phone call or text on which items to steal and their locations. Epperly also provided the couple with master keys for equipment so they could operate and load the stolen equipment into their vehicle before hauling it back to Oklahoma. Affidavit, at 5.

Epperly, along with a co-conspirator Auston Slater, then arranged to sell these items, with Henderson getting a cut of the sale. Defendant Lee was one frequent buyer, according to Czermak. During the course of the conspiracy, Mr. Lee purchased approximately $300,000 worth of property for roughly $60,000. Czermak and Henderson would deliver the property to Mr. Lee, many times dropping it at locations owned by him, including his business, Richardson Homes, in Tuttle, Oklahoma. Czermak also detailed letters that she had written to Mr. Lee while in jail requesting that he or others bond her out. Affidavit, at 5–6.

With Czermak's confession in hand, investigators proceeded that same day, September 29, 2016, to Mr. Lee's home residence in Newcastle, Oklahoma, where Mr. Lee turned over two of the letters he had received from Czermak. The letters, which Czermak had mailed to Richardson Homes but Mr. Lee had brought home to his residence, infer that Czermak will reveal Mr. Lee's role in the conspiracy if he does not bail Czermak out of jail. Mr. Lee also received a third letter from Czermak two days later, but he refused to hand that letter over, explaining to the police that it suggested he was complicit. Affidavit, p. 6–7.

Turning over these letters was not the extent of Mr. Lee's involvement in the investigation. Mr. Lee also led police to one of his Richardson Homes buildings, where

police found two stolen tractors with a combined value of $40,270. Mr. Lee explained that though he had purchased them from Epperly by check, he now had reason to believe Epperly had stolen the tractors; Mr. Lee even considered dumping the tractors on the side of the road to get rid of them. Affidavit, at 7.

The affidavit also shed light on other conspirators. Data obtained pursuant to a search warrant of Epperly's phone revealed multiple photographs and messages referencing the sales of stolen tractors, trailers, golf carts, lawn mower, ATVs, UTVs, and farm equipment. Also on Epperly's phone were texts to Mr. Lee himself about the stolen property. Like Czermak, Henderson also offered a confession, and apparently one that corroborated Czermak's tale and included how he had recorded Czermak, Epperly, and Mr. Lee while delivering one of the stolen tractors to Richardson Homes. The rest of the affidavit explained the usual workings of interstate theft rings in the experience of the affiant, Agent Kenneth Thompson. Conspirators would typically use cell phones to facilitate their business, and the investigation so far had revealed these conspirators were no different. Further, conspirators often rely on false bills of sale to conceal their criminal activity and will typically keep these at a secure location such as a residence or business. Affidavit, at 12.

To that end, the probable-cause affidavit sought, and the warrant approved, the search of Mr. Lee's residence in Newcastle, Oklahoma, and the seizure of a list of items, including

- Mr. Lee's cell phone
- Letters or correspondence from Czermak

- Notes, documents, or any other records pertaining to the sale, purchase, or possession of stolen property
- Paperwork and documents, business or otherwise, that referenced recent travel to surrounding states that coincided with the time property was stolen
- Checks or copies of checks received or issued that coincide with the purchase or sale of stolen property
- Money transfer receipts or packages related to the use of fictitious information used in the sale or purchase of stolen property
- Master keys
- Documents or other personal property establishing the use or ownership of stolen property

Affidavit, 33–36.

## IV

While at first blush the question is whether this affidavit established probable cause to search Mr. Lee's home for these items, this question is not one the Court must definitively answer. The Government relies on the good-faith standard of *United States v. Leon*, 468 U.S. 897 (1984), under which evidence found pursuant to a deficient search warrant will not be excluded so long as the officers executing the warrant acted in good faith. In other words, the Court may deny Mr. Lee's motion simply by determining whether the officers who executed the warrant did so in good faith. *See United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000) ("In reviewing suppression motions, courts have the discretion to proceed directly to an analysis of the good-faith exception without first addressing the underlying Fourth Amendment question."); *see also United States v. Harwell*, 426 F.Supp.2d 1189, 1196 (D. Kan. 2006) ("collapsing [the court's] analysis of probable cause and the good-faith exception"). Yet "[w]hile the good-faith exception is broad, it is not boundless," *United States v. Cordova*, 792 F.3d 1220, 1226 (10th Cir. 2015), meaning there are scenarios in which the Government cannot claim its officers acted in

good faith. One such exception, relied on by Mr. Lee here, is when the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 486 U.S. at 934.

In other words, the Court may presume without deciding that this warrant lacked probable cause. That determination, though, is far from certain. All of the items approved by the warrant for seizure could have reasonably been in Mr. Lee's possession. His cell phone, master keys, and electronic records were used to further the conspiracy according to Czermak and the affiant. Mr. Lee had already admitted to receiving letters from Czermak, and had taken two such letters to his residence. Further, it seems reasonable that stealing property in and traveling to surrounding states would leave some paper trail; that Mr. Lee would have copies of checks used to purchase the stolen property (given he admitted to paying Epperly by check); and that there would be at least a few documents relating to Mr. Lee's ownership of stolen property, considering that property was valued at more than $300,000 according to Czermak. As for whether that evidence would be found in Mr. Lee's *residence* rather than at his business, for example, the affiant stated that evidence of interstate theft rings is commonly kept in secure areas such as a business or residence. And Mr. Lee, after all, had already brought home his correspondence with Czermak.

In short, the contention that the Magistrate Judge lacked a substantial basis for finding probable cause is no sure thing, but at any rate, the Court's inquiry under the good-faith standard is "whether a reasonably trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. McKneely*, 6 F.3d 1447,

1454 (10th Cir. 1993). The weight of the affidavit—from its detailed description of the conspiracy, to its specific list of items to be seized, to the reasonableness of the idea that Mr. Lee would keep evidence of his crime at home or on his person rather than his business—compels the conclusion that officers were objectively reasonable in relying on this warrant. Defendant's Motion [Doc. 83] is therefore DENIED.

IT IS SO ORDERED this 31st day of May 2017.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE